## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GEORGE O. MILES, JR.,

      Petitioner,

-vs-                             Case No.   8:18-cv-2200-WFJ-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

### ORDER

Mr. Miles, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response opposing the petition (Doc. 6). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Mr. Miles was charged with first-degree murder (Doc. 6-2, Ex. 2). Under a plea agreement, he pleaded no contest to second-degree murder and was sentenced to 20 years in prison (Id., Exs. 3-5). Mr. Miles voluntarily dismissed his direct appeal (Id., Ex. 8).

Mr. Miles moved for DNA testing in which he contended that testing of blood from the inside of a vehicle (Suburban) that was at the location where and when the victim was killed would establish that one of his co-defendants, Tarik Smallhorne,

1

killed the victim (Id., Ex. 10). The motion was dismissed as facially insufficient (Id., Ex. 11). The dismissal was affirmed on appeal (Id., Ex. 18).

Then Mr. Miles filed a second motion for DNA testing (Doc. 6-5, Ex. 43). That motion was denied (id., Ex. 45), and the denial was affirmed on appeal (Id., Ex. 48).

Mr. Miles filed a motion and amended motion under Rule 3.800, Fla.R.Crim.P., requesting a reduction in his sentence because his co-defendants received much shorter sentences (Doc. 6-2, Exs. 20, 21).[1] The motion was denied (Id., Ex. 22).

Mr. Miles filed a motion and three amended motions under Rule 3.850, Fla.R.Crim.P., alleging claims of ineffective assistance of defense counsel (Doc. 6-3, Exs. 23, 24, 29; Doc. 6-4, Ex. 32). The state post-conviction court denied two claims and ordered an evidentiary hearing on the five remaining claims (Doc. 6-4, Ex. 34). After the evidentiary hearing (id., Ex. 35), the remaining five claims were denied (Id., Ex. 36). The denial of the Rule 3.850 motion was affirmed on appeal (Id., Ex. 41).

## II. GOVERNING LEGAL PRINCIPLES

Because Mr. Miles filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty

---

[1] The motion did not indicate the length of the co-defendants' sentences (Id.).

Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

**A. Standard of Review Under the AEDPA**

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court

decisions; the 'contrary to' and 'unreasonable application' clauses articulate

independent considerations a federal court must consider." *Maharaj v. Secretary for*

*Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was

discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831,

835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the
> state court arrives at a conclusion opposite to that reached by [the
> United States Supreme Court] on a question of law or if the state court
> decides a case differently than [the United States Supreme Court] has
> on a set of materially indistinguishable facts. Under the 'unreasonable
> application' clause, a federal habeas court may grant the writ if the state
> court identifies the correct governing legal principle from [the United
> States Supreme Court's] decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly,

habeas relief is appropriate only if that application was "objectively unreasonable."

*Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus

if the state court's decision "was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." A determination of

a factual issue made by a state court, however, shall be presumed correct, and the

habeas petitioner shall have the burden of rebutting the presumption of correctness

by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only

---

2 In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).

Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*

6

*v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a

constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

**Ground One**: **WHETHER THE STATE COURT'S [sic] UNREASONABLY APPLIED STRICKLAND v. WASHINGTON, 466 U.S. 668,104 S. CT. 2052, 80 L. ED. 2D 674 (1984); HILL v. LOCKHART, 474 U.S. 52, 106 S. CT. 366, 88 L. ED. 2D 203 (1985) TO THE PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO INVESTIGATE THE PETITIONER'S CASE PRIOR TO ADVISING THE PETITIONER TO ENTER A PLEA OF NOLO CONTENDERE FOR THE CRIME OF SECOND DEGREE MURDER WITHOUT A FIREARM FOR A SENTENCE OF TWENTY YEARS (FDOC) CAUSING THE PLEA TO BE INVOLUNTARY IN VIOLATION OF BOYKIN v. ALABAMA, 395 U.S. 238,243 n. 5, 89 S. CT. 1709, 1712 n. 5, 23 L. ED. 274, 280 n. 5 (1969); FINCH v. VAUGHN, 67 F. 3D 909 (11TH CIR.1995).**

Mr. Miles contends that defense counsel was ineffective in failing to either adequately investigate his case or adequately discuss the results of the investigation or discovery with him before he accepted the plea agreement. Specifically, Mr. Miles alleges that counsel rendered deficient performance because he failed to: 1) depose critical witnesses; 2) investigate and obtain DNA testing of blood discovered in the Suburban; 3) inform Mr. Miles that witnesses made inconsistent statements; and 4)

8

investigate the co-defendants' motives for lying and shifting responsibility for the crime to Mr. Miles.

This claim was raised in state court in Ground One of Mr. Miles' Rule 3.850 motion (Doc. 6-3, Exs. 23, 24, 29). In denying the claim, the state post-conviction court stated:

> Ground 1 of the Defendant's Motion reads, "The Defendant's counsel was ineffective for failing to adequately investigate the case prior to advising the Defendant to enter a plea, which rendered the plea involuntary and prejudiced the Defendant." Ground 1 of the Defendant's Motion is broken down into sub-parts 1A, lB, 1C, and 1D.

> In Ground 1A, the Defendant alleges, "Defense counsel was ineffective for failing to depose critical witnesses." The Defendant alleges that several material witnesses were subpoenaed but did not show up. Counsel did nothing to reschedule the witnesses.

> The Defendant names Homicide Detective David Clark, Detective Angela Macke, Fire Marshall Greg Bubb, and Crime Scene Technician Brindy Tanner, as people who were served with a subpoena, but did not appear for their depositions. Additionally, the Defendant argues that Shirley Shakespeare, who he calls an alibi witness, was not successfully served with a subpoena, because counsel did nothing to accomplish proper service on her. The Defendant notes that she was in the custody of Immigration and Custom Enforcement (ICE) authorities in Orange County. The Defendant asserts what could have been learned from all of these people had the depositions been accomplished. In the Court's "Order Granting Evidentiary Hearing And Order Setting Status Conference," the Court found that the Defendant has not shown any deficiency of counsel in not deposing critical witnesses. The Defendant has not explained what information could have been obtained from such depositions that was not apparent from the discovery. The Court adopts by reference the findings in the "Order Granting Evidentiary Hearing And Order Setting Status Conference," filed on March 16, 2016, wherein the Court found that the Defendant had not shown any deficiency of counsel in not deposing critical witnesses.

In the "Defendant's Second Amended Motion For Post Conviction Relief," he added to his Ground that he was not given discovery by his counsel prior to entering his plea and was not aware of the above facts until he obtained his discovery well after he was sentenced. The Defendant asserted, "[i]f the Defendant had been provided the discovery materials in the present case, he never would have pled nolo contendere, but rather would have proceeded to trial." The Defendant also says with regard to his Ground 1A, "[h]ad the Defendant learned of any of the above-named evidence, he would not have pled but rather would have proceeded to trial in this case. [sic]

In the Court's "Order Granting Evidentiary Hearing And Order Setting Status Conference," the Court found that the Defendant had not shown any deficiency in not deposing critical witnesses. The Defendant has not explained what information could have been obtained from such depositions that was not apparent from the discovery. However, the Court found that the Defendant had raised a facially sufficient claim with regard to Ground 1A that his plea was involuntary because his counsel provided ineffective assistance in not providing him with discovery related to these critical witnesses prior to entry of his plea. This aspect of Ground 1A was presented and argued at the evidentiary hearing.

At the evidentiary hearing, the Defendant testified that he did not get a complete copy of his discovery until he entered his plea. He asserted that he had gotten a glimpse of the discovery earlier at the county jail, but his attorney told him that he had to make a copy of it before he could give it to him.

Mr. Blankner testified at the evidentiary hearing that as he got the discovery he would visit the Defendant in jail. He would leave the discovery with the Defendant so he could make notes and ask him questions. He warned his client about other people in jail reading his discovery and becoming a jail house witness. He testified that he would come back and get the Discovery after his client had an opportunity to go through it. He testified that he discussed the various witnesses and their statements with the Defendant, and he thought the Defendant had a good knowledge of the witnesses in the case.

10

The Court finds that Mr. Blankner's testimony that he shared discovery with his client and discussed the witnesses and their statements with the Defendant was very credible. The Court does not find that the Defendant's claim to be credible that his attorney did not provide him with discovery related to these critical witnesses prior to entry of his plea. Ground lA of the Defendant's Motion is denied.

In Ground 1C, the Defendant alleges "Defense counsel was also ineffective when he failed to investigate and/or advise the Defendant that the State's witnesses had materially inconsistent statements that would have provided a trial strategy of fabrication." The Defendant alleges that if had known about the inconsistent versions of events given by various State witnesses he would not have pled and would have proceeded to trial.

The Defendant asserts that Reginald Luke told police that he heard the victim's trunk slam, he looked out the window and saw Noble leaning on the victim's vehicle with his hands on the trunk. The Defendant claims that Mr. Luke also saw Mr. Deer walking away with a gun in his hand. Outside the window, the Defendant also saw the Defendant arguing with Petagayle Davis, and saw the Defendant not participating with Noble and Deer near the victim's car. Petagayle Davis told the police that she saw Deer and Noble put the victim's body in the trunk of the car. The Defendant alleges that co-felon Noble told police that Mr. Smallhorne and the Defendant loaded the victim's body in the car. Mr. Smallhorne told police that the Defendant and Mr. Noble loaded the body in the car. On March 11, 2009, Mr. Smallhorne testified in Court that he did not see who put the victim's body into the trunk.

In the "Defendant's Second Amended Motion For Post Conviction Relief," the Defendant adds that he does not know if counsel received and reviewed the discovery containing the inconsistencies in the stories of the various witnesses in this case, but in any event counsel failed to supply discovery materials to the Defendant prior to the plea hearing. The Defendant alleges he was forced to enter a nolo contendere plea with [sic] knowing the strength of the State's case or the existence of exculpatory evidence from the witnesses who were not deposed.

In the Court's "Order Granting Evidentiary Hearing And Order Setting Status Conference," the Court found that the Defendant had not shown any deficiency of counsel in failing to investigate the State witnesses identified above. The Defendant has not explained what information could have been obtained from further investigation of these witnesses that was not apparent from the discovery. However, the Court found that the Defendant had raised a facially sufficient claim with regard to Ground 1C that his plea was involuntary because his counsel provided ineffective assistance by not providing him with discovery materials related to inconsistent statements and fabrication by these witnesses prior to the plea hearing. This aspect of Ground 1C was presented and argued at the evidentiary hearing.

At the evidentiary hearing, the Defendant testified that his attorney never discussed the inconsistent statements with him. The Defendant alleged that he became aware of the inconsistent statements when he went through the Discovery after his plea. Mr. Blankner testified at the evidentiary hearing that he went over the Discovery with the Defendant and discussed the witnesses and their statements with him.

The Court finds that Mr. Blankner's testimony that he shared discovery with his client and discussed the witnesses and their statements with the Defendant was very credible. The Court does not find that the Defendant's claim to be credible that his attorney did not share Discovery with him and go over the inconsistent statements of the witnesses with him. Ground 1C of the Defendant's Motion is denied.

In Ground 1D, the Defendant alleges, "Defense counsel was ineffective for failing to investigate into the co-felons' motives for lying to shift culpability towards Defendant and off themselves." Mr. Noble was in the country illegally and was facing deportation for a previous conviction providing him with a motive to fabricate his testimony and shift the blame to the Defendant. Ms. Chima McClean told law enforcement that the victim owed Mr. Noble a large sum of money for unpaid illegal drugs. Co-felon Shakespeare told the police that Mr. Noble told the victim that he was going to "f- - k him up" if he did not pay his debt. She told police that Mr. Noble and the victim were in an intense argument just before the murder occurred, and she heard Noble

and Deer say they should go ahead and kill the victim on the night the victim was murdered.

The Defendant alleges that Mr. Smallhorne's wife, Athalie Smallhorne, was charged with possession of a gun allegedly connected to the murder and was facing deportation. The Defendant also claims that she had also been threatened by the Department of Child and Family Services with removal of her children because of involvement in the murder. The Defendant argues that this provided a basis for Mr. Smallhorne to cast the blame on the Defendant to save his wife.

The Defendant alleges that counsel did not investigate to learn of the existence of multiple bases to impeach the State witnesses, as discussed above. The Defendant asserts that if [sic] had been advised of the existence of these bases for impeachment of the State witnesses he would not have entered a plea and would have proceeded to trial. The Defendant alleges that counsel failed to advise him of the existence of a viable defense that the co-felons were shifting the blame to garner favor by the State for themselves.

In the "Defendant's Second Amended Motion For Post Conviction Relief," he adds that the Defendant learned information about Ms. Smallhorne, (that she was facing deportation and received a threat from the Department of Child And Family Services) from counsel Blankner while in jail.

In the "Defendant's Third Amended Motion For Post Conviction Relief," the Defendant state's "[t]he Defendant has no way of knowing if his trial counsel received and reviewed the discovery documents in this case, but does aver that counsel never discussed the discovery documentation with him or provided him a copy prior to advising him to plead no contest in this case."

In the Court's "Order Granting Evidentiary Hearing And Order Setting Status Conference," the Court found that the Defendant had not shown any deficiency by counsel in failing to investigate his co-felons' motives for lying to shift culpability towards the Defendant. The Defendant has not explained what information could have been obtained from such an investigation that was not apparent from the discovery. However, the Court did find that the Defendant had raised a

facially sufficient claim that his plea was not voluntary because he was given ineffective assistance of counsel when his attorney did not provide him with discovery related to his co-felons' motives for lying to shift culpability towards Defendant and off themselves prior to entry of his plea. This aspect of Ground 1D was presented and argued at the evidentiary hearing.

At the evidentiary hearing, the Defendant testified that his attorney did let him know that Athalie Smallhorne had been threatened by DCF. However, he further testified that he did not know other information regarding his co-felons [sic] motives for lying until he went through the discovery after entering his plea.

Mr. Blankner testified at the evidentiary hearing that he went over the Discovery [sic] with the Defendant and discussed the witnesses and their statements with the Defendant. Mr. Blankner testified that Tarik Smallhorne was the Defendant's brother-in-law, and he was the most damaging witness in Mr. Blankner's opinion. Mr. Smallhorne had said that the victim had begged him to help save his life, but he was not able to do anything for fear of his own safety. Mr. Smallhorne was a well-regarded Chef at a hotel, and Mr. Blankner testified that the Defendant indicated to him that he had not had any previous problems with Mr. Smallhorne. Mr. Blankner testified that Mr. Smallhorne did not seem to be involved in the drug activity, and he discussed how hard it would be to impeach Mr. Smallhorne with the Defendant. He told the Defendant there was a slim possibility that he could use something with regard to Mr. Smallhorne's immigration status. He further testified that he also discussed Athalie Smallhorne's immigration status with the Defendant.

The Court finds that Mr. Blankner's testimony that he shared discovery with his client and discussed the witnesses and their statements with the Defendant was very credible. The Court does not find that the Defendant's claim to be credible that his attorney did not provide him with discovery related to his co-felons [sic] motives for lying to shift culpability towards the Defendant. Ground lD of the Defendant's Motion is denied.

(Doc. 6-4, Ex. 36, docket pp. 296-300). The state appellate court affirmed the state post-conviction court's ruling (Id., Ex. 41).

**Ground 1A: Failure to depose witnesses**

Mr. Miles contends that defense counsel was ineffective in failing to depose Detective David Clark, Detective Angela Macke, Fire Marshall Greg Bubb, Crime Scene Technician Brindy Tanner, and "alibi witness" Shirley Shakespeare. He alleges that Clark would have testified that: 1) no witnesses told police they saw Mr. Miles beat the victim; 2) witnesses told the police they saw Noble and Deer put the victim's body in the trunk; 3) there was evidence that a day before the murder, Deer threatened to "fu—up" the victim; 4) Mr. Miles' girlfriend (Petagayle Davis) provided an alibi for him for the time the vehicle was burned; 5) the victim owed Noble $20,000.00 and was pressured to pay the debt; and 6) the victim had been blamed for one of the co-defendants getting shot. He further alleges that: 1) Macke and Tanner would have testified that the blood found in the Suburban, the vehicle in which the co-defendants drove and rode after the murder, matched neither the victim nor Mr. Miles; 2) Bubb would have testified that the fire department's investigation revealed no evidence tying Mr. Miles to the arson of the victim's vehicle; and 3) Shakespeare would have testified that after she saw Noble and Deer put the victim's body into the trunk of the victim's car, Mr. Miles took her home and, to her knowledge, he never left their home that night.

The state post-conviction court found that the witnesses' proposed testimony was available in the pre-trial discovery. That finding is supported by the record (Doc. 6-3, Ex. 23, docket pp. 67-69, 152, 156, 162, 170, 175-77, 213-16, 231-32).[3] The state post-conviction court also found credible defense counsel's testimony that he gave Mr. Miles the discovery to review and discussed the discovery and the witnesses statements with Mr. Miles.[4] The court further found not credible Mr. Miles' testimony that defense counsel failed to provide him with the discovery regarding the witnesses.[5]

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1260 (11th Cir. 2016). "[Q]uestions about the credibility and demeanor of a witness is a question of fact." *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (citing *Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc)). Under § 2254(e)(1), "[f]ederal habeas courts generally defer to

---

3 It appears Bubb's proposed testimony is not in the record. Nevertheless, his proposed testimony that no physical evidence tied Mr. Miles to the arson of the victim's vehicle appears inconsequential because Mr. Miles admitted to Detective Clark that he drove the victim's vehicle with the victim's body in the trunk, was unable to set the vehicle on fire because he had no matches, and a co-defendant burned the vehicle (Doc. 6-4, Ex. 35, docket pp. 212-13). Additionally, it appears Davis (Mr. Miles' girlfriend at the time of the murder) rather than Shakespeare told the police that after she saw the victim placed in the trunk, Mr. Miles took her home (Doc. 6-3, Ex. 23, docket p. 156).
4 See Doc. 6-4, Ex. 35, docket pp. 264-68.
5 See Doc. 6-4, Ex. 35, docket p. 203.

the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc). "Determining the credibility of witnesses is the province and function of state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The state court's credibility determination is presumed correct. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("Reasonable minds reviewing the record might disagree about the [witness]'s credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination.").

The state court's credibility determinations bind this Court. Mr. Miles presents no basis for rejecting the state court's credibility determinations and fails to overcome the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). As a result, the Court finds that defense counsel was not deficient in failing to depose these witnesses because the information they allegedly would have provided was in the discovery, which was provided to and discussed with Mr. Miles before he signed the plea agreement.

**Ground 1B: Failure to investigate DNA evidence**

Blood stains were discovered in the Suburban that was at the location of the murder and accompanied the victim's vehicle during the drive from Orange County, Florida, to Polk County, Florida, after the murder (Doc. 6-3, Ex. 23, docket pp. 69-75).[6] The results of DNA testing revealed that the blood was neither from the victim nor Mr. Miles (Id.). Mr. Miles contends he did not discover this information until after he entered his plea. He further contends defense counsel was ineffective in failing to pursue testing to ascertain whether the DNA from the blood stains matched the DNA of any of his co-defendants. He argues that if there was a match, it would tend to prove at least one of the co-defendants was involved in beating the victim, and the co-defendants falsely testified that Mr. Miles was the only one who beat the victim.

To the extent Mr. Miles contends he did not have the information about the DNA results before he entered his plea because defense counsel failed to provide him with the discovery, the state post-conviction court found the discovery was provided to Mr. Miles before he entered his plea (see above, Ground 1A). To the extent Mr. Miles contends defense counsel was ineffective in failing to pursue further DNA

---

6 A statement to law enforcement indicated that Smallhorne, Noble, and Deer rode in the Suburban while Mr. Miles drove the victim's car (Doc. 6-3, Ex. 23, docket pp. 137-39).

testing to ascertain whether the DNA from the blood stains matched DNA of one of

the co-defendants, the state post-conviction court denied the claim as follows:

> In Ground 1B, the Defendant alleges, "counsel was ineffective when he failed to investigate DNA evidence discovered in the Chevy Suburban reportedly used in the crime prior to requiring the Defendant to enter his nolo-contendere plea." The blood evidence found in the Suburban was not a match for the Defendant or the victim. The Defendant did not learn of the testing results until well after he entered his plea and had been sentenced. Defense counsel did not seek testing of the blood evidence to see if it matched the other co-felons. Co-felon witnesses testified at the bond hearing on March 11, 2009, that the Defendant was the only person who beat the victim. The blood evidence tends to prove that the co-felons were lying about the Defendant being the only person who beat the victim. The Defendant further asserts that this raises a question about whether the Defendant even participated in the beating.

> The Defendant alleges that the blood found in the Suburban where Tarik Smallhorne was sitting is evidence that he was at least involved in the beating and was somehow injured. This evidence would have given credibility to the Defendant's allegation that Noble and Smallhorne fabricated their stories to reduce their own culpability and garner leniency in their own cases. The co-felons' testimonies could have been impeached and this would have supported a viable trial strategy that the other co-felons murdered the victim and conspired together to cast the blame on the Defendant.

> The FDLE reports and supplemental resports [sic] attached to the Defendant's Motion as Exhibit F showed that the DNA did not match the Defendant or the victim. The Defendant's claim that DNA evidence would have shown that Tarik Smallhorne or other co-defendants were involved in the beating of the victim is mere conjecture. There is no evidence of how the blood got in the Suburban or when it was deposited in the Suburban.

> Even if the blood was shown to be from Tarik Smallhorne or one of the co-defendants, it would not have any impeachment value unless the blood was found to be from Tarik Smallhorne or one of the co-

19

defendants, and he or they testified to not being in the Suburban. The Defendant's Ground 1B is based on speculation, and it is denied.

(Doc. 6-3, Ex. 28, docket pp. 369-70).

The state post-conviction court correctly determined that the claim was speculative. Mr. Miles presented no evidence that DNA from the blood stain matched one of the co-defendant's DNA. It is equally possible that a DNA test would reveal no match with the DNA of the co-defendants because the Suburban was a rented vehicle (see Doc. 6-3, Ex. 23, docket p. 69) and there is no indication when the stain were made. And, even if the DNA test determined that a co-defendant's DNA was present, it is pure conjecture that the blood came from an injury sustained by a co-defendant while beating the victim. Therefore, this claim is too speculative to warrant federal habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)).

**Ground 1C: Failure to investigate or advise of inconsistent statements**

Mr. Miles contends that defense counsel was ineffective in failing to either investigate inconsistent statements from the State's witnesses or inform Mr. Miles of the inconsistent statements. He alleges that after he entered his plea, he reviewed the

discovery and saw inconsistent statements regarding who placed the victim's body in the trunk of his car. Specifically, he asserts that: 1) Reginald Luke stated that after he heard a slam, he looked out a window from inside the house and saw Noble leaning on the trunk of the victim's car, and Deer walking away from the car with a gun in his hand; 2) Davis stated she saw Deer and Noble put the victim's body in the trunk; 3) Noble stated Mr. Miles and Smallhorne put the victim's body in the trunk; and 4) Smallhorne stated to police that Noble and Mr. Miles put the victim's body in the trunk but later testified in court he did not see who put the victim in the trunk. Mr. Miles avers that had he known of these inconsistent statements he would have proceeded to trial rather than accept the plea agreement.

The state post-conviction court found defense counsel's testimony that he provided Mr. Miles with the discovery and discussed the witnesses' (Smallhorne, Luke, Deer, Noble, etc.) statements[7] with Mr. Miles before he accepted the plea agreement more credible than Mr. Miles' testimony that defense counsel never discussed the statements with him, and he learned of the statements only after reviewing the discovery after entering his plea.[8] Mr. Miles has not shown, by clear and convincing evidence, that the state court's credibility determination was unreasonable. He fails to meet his burden of rebutting with clear and convincing

---

7 See Doc. 6-4, Ex. 35, docket p. 265.
8 See Doc. 6-4, Ex. 35, docket pp. 203-04.

evidence the presumption of correctness afforded the state post-conviction court's credibility determination. 28 U.S.C. § 2254(e)(1). Therefore, defense counsel's performance was not deficient because he provided the witnesses' statements to, and discussed those statements with, Mr. Miles before he entered into the plea agreement.

Even had defense counsel failed to provide and discuss the statements, Mr. Miles has not demonstrated prejudice. "Where a claim of ineffective assistance involves a plea agreement, to show prejudice, the defendant must show 'a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In so doing, a defendant must demonstrate that 'a decision to reject the plea bargain would have been rational under the circumstances.' *Padilla*, 559 U.S. at 371, 130 S.Ct. 1473." *Gutierrez v. United States*, 560 F. App'x 924, 927 (11th Cir. 2014).

Rejecting the plea bargain would not have been rational under the circumstances in Mr. Miles' case. Defense counsel was convinced there was a strong chance that Mr. Miles would be convicted and sentenced to life (Doc. 6-4, Ex. 35, docket p. 260). Although witness testimony varied regarding who put the victim's body in the trunk of his car, all the evidence showed that Mr. Miles was present when the body was placed in the trunk, and he admitted to Detective Clark he drove

22

the victim's car from Orange County to Polk County before the car was set on fire (Doc. 6-4, Ex. 31, docket p. 74; Ex. 35, docket pp. 212-13). Moreover, Smallhorne testified that he witnessed Mr. Miles beating the victim with a rifle (Doc. 6-3, Ex. 23, docket p. 106-10). Considering the strong evidence of his guilt, Mr. Miles has not shown that but for defense counsel's alleged errors, there is a reasonable possibility he would have rejected the plea agreement (that included a reduced charge of second-degree murder and 20 years in prison) and taken the case to trial, risking a life sentence. Mr. Miles demonstrates neither deficient performance nor prejudice regarding this claim.

### Ground 1D: Failure to investigate co-defendants' motives

Mr. Miles alleges that both Noble and Smallhorne had reasons to lie and shift the blame for the murder on him. He asserts there was evidence that Noble had a motive to kill the victim - - the victim's girlfriend told police that the victim owed Noble a large sum of money for past drug deals. And there was evidence that tended to show Noble may have been the perpetrator of the murder - - Shakespeare told law enforcement she heard: 1) Noble tell the victim he would "fu- - him up" if he did not pay the debt; 2) Noble and Deer say they should just kill the victim; and 3) Noble and the victim arguing shortly before the murder. Because Noble was an illegal alien with a prior conviction and therefore faced deportation if convicted, he had a strong incentive to blame Mr. Miles.

Smallhorne likewise had a strong reason to shift the blame to Mr. Miles. Smallhorne wanted to protect his wife, who was charged with possession of a gun connected to the murder. If convicted, she faced deportation and removal of her children by the State.

Mr. Miles contends defense counsel was deficient in failing to investigate, discover, and advise Mr. Miles of this information that could have been used to impeach the co-defendants. He argues the information would have provided a viable defense - - the co-defendants committed the crime and shifted the blame to Mr. Miles to hide Nobles' motive to kill the victim, prevent Noble and Mrs. Smallhorne's deportations, and prevent removal of Mrs. Smallhorne's children. Mr. Miles opines that had he known this defense was available, he would not have accepted the plea agreement.

During the evidentiary hearing, Mr. Miles admitted that he and defense counsel discussed Smallhorne's motivation to protect his wife (Doc. 6-4, Ex. 35, docket p. 204). Defense counsel testified that he and Mr. Miles discussed the immigration issues concerning Smallhorne and his wife (Id., docket p. 267). And Shakespeare and the victim's girlfriend's statements were in the police report included with the discovery, which the state post-conviction court found was provided to Mr. Miles before he accepted the plea agreement (Doc. 6-3, Ex. 23, docket pp. 147- 50,162-63).

Mr. Miles has not shown, by clear and convincing evidence, that the state court's factual determination was unreasonable. Therefore, defense counsel's performance was not deficient because he provided the discovery to Mr. Miles and discussed the impeachment evidence with him before Mr. Miles entered into the plea agreement.

Mr. Miles has failed to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2). Accordingly, Ground One warrants no relief.

**Ground Two: WHETHER THE STATE COURT'S UNREASONABLY APPLIED STRICKLAND v. WASHINGTON, 466 U.S. 668,104 S. CT. 2052, 80 L. ED. 2D 674 (1984); HILL v. LOCKHART, 474 U.S. 52, 106 S. CT. 366, 88 L. ED. 2D 203 (1985) TO THE PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COERCING MR. MILES TO PLEAD NOLO CONTENDERE BY TELLING PETITIONER THAT HE HAD NO DEFENSE TO BEAT THE CASE AND HE WOULD GET TWENTY YEARS FOR THE REDUCED CHARGE OF SECOND DEGREE MURDER WITHOUT A FIREARM AND THAT AFTER HE CHANGED HIS PLEA, AT SENTENCING, COUNSEL WOULD FILE A MOTION FOR REDUCTION OF SENTENCE AND THE TRIAL COURT WOULD SENTENCING [sic] HIM TO THE SAME SENTENCE THAT HIS ALLEGED CODEFENDANT RECEIVED. A SENTENCE THAT IS LESS THAN THE TWENTY YEARS, CAUSING THE PLEA TO BE INVOLUNTARILY ENTERED IN VIOLATION OF BOYKIN v. ALABAMA, 395 U.S. 238, 243 n. 5, 89 S. CT. 1709, 1712 n. 5, 23 L. ED. 274, 280 n. 5 (1969); FINCH v. VAUGHN, 67 F. 3D 909 (11TH CIR. 1995).**

Mr. Miles contends he was coerced into pleading no contest by defense counsel who told him he had no defense to first-degree murder and assured him that if he accepted the plea agreement under which he would plead no contest to second-

degree murder and receive a 20-year sentence, the trial court would reduce his

sentence to one comparable to those of his co-defendants'.[9]

This claim was raised in state court in Ground Two of Mr. Miles' Rule 3.850

motion (Doc. 6-3, Exs. 23, 24, 29). In denying the claim, the state post-conviction

court stated:

Ground 2 of the Defendant's Motion reads, "The Defendant's counsel was ineffective for coercing him into pleading nolo contendere which rendered the plea involuntary and prejudiced the Defendant." The Defendant alleges, "defense counsel told the Defendant that he had no defense, that there was no way to beat the case and that he had no other option other than to accept the plea offer of twenty (20) years in prison." The Defendant asserts that defense counsel had not even completed a competent investigation of the case, witnesses, and forensic evidence to base this advice upon. The Defendant alleges, "As noted in the above grounds, the State's case against the Defendant was weak and the Defendant had a viable defense, such that counsel gave Appellant misadvice that caused him to enter an involuntary plea."

The Defendant also alleges, "Attorney Blankner also induced the Defendant to enter a guilty plea in this case by telling him that he would use the positive recommendations from the assistant state attorney and Detective Clark to secure a sentence reduction later based upon the substantial leniency provided to the co-felons in this case." The Defendant asserts, "[a]bsent this coercing and inducing by counsel, the Defendant would not have entered the plea in this case but rather would have proceeded to trial. The only reason the Defendant chose to accept the twenty (20) year offer was because of counsel's assertions that he had no other options, and if he took the plea counsel would obtain a sentence reduction at a later date. However, the sentence reduction never occurred."

---

9 Mr. Miles testified that he believed that one co-defendant received seven years' probation, another co-defendant lost at trial and was sentenced to three years' prison and two years' probation, the third co-defendant received a 16-month sentence, and the charges were dismissed against the fourth co-defendant (Doc. 6-4, Ex. 35, docket p. 200). He identified neither the co-defendants nor the information on which he relied for his testimony. The Court takes judicial notice of information on the Florida Department of Corrections Offender Network, http://www.dc.state.fl.us/offenderSearch, that indicates Sean Noble received a sentence of four years' prison for accessory after the fact, and Christopher Deer received a sentence of two years, ten months, fifteen days' prison for accessory after the fact.

In the Court's "Order Granting Evidentiary Hearing And Order Setting Status Conference," the Court found that the Defendant had not shown that counsel failed to complete an adequate investigation of his case. It appears that a significant amount of information about the case was available to counsel through discovery. However, the Court found that the Defendant had raised a facially sufficient claim to the extent he is arguing that his counsel told him he had no defense or other option than to accept the plea and advised him that he would secure a sentence reduction later. This aspect of Ground 2 was presented and argued at the evidentiary hearing.

The Defendant testified at the evidentiary hearing that Mr. Blankner promised him he could get him a sentence reduction later if he went through with the plea. Mr. Miles also testified that he did not tell this to the Court at the time he entered his plea. Additionally, Mr. Miles testified that his attorney told him to answer yes to the questions asked by the Court or his plea would not go through.

Mr. Blankner testified at the evidentiary hearing that the Defendant was cooperative with him, and this was not the first case that he had represented the Defendant. He said that he had represented Mr. Miles on a Trafficking case that was dismissed. Mr. Blankner testified that Mr. Miles made the decision to accept the plea, and he did not tell him to be untruthful to the Court. He said that Mr. Miles was not coerced, and he certainly would have gone to trial if Mr. Miles had not decided to accept the plea. He also testified that he never promised Mr. Miles that he could get a sentence reduction.

The Court finds Mr. Blankner's testimony to be highly credible that the Defendant made the decision to accept the plea without coercion and was not told to be untruthful to the Court. Additionally, the Court finds Mr. Blankner's testimony that he never promised the Defendant a sentence reduction to be highly credible. The Court does not find the Defendant's claims to be credible that he was coerced, promised a sentence reduction, and told to be untruthful to the Court. Ground 2 of the Defendant's Motion is denied.

(Doc. 6-4, Ex. 36, docket pp. 300-01).

During the evidentiary hearing on the Rule 3.850 motion, defense counsel

testified that he was convinced that if Mr. Miles went to trial, he would be convicted

and receive life in prison (Doc. 6-4, Ex. 35, docket p. 260). He discussed the evidence

with Mr. Miles and left discovery with Mr. Miles at the jail for Mr. Miles to review (Id., docket p. 264). Mr. Miles wanted defense counsel to pursue a plea offer (Id., docket p. 269). And although Mr. Miles was hoping for an offer of 10 to 15 years, counsel recommended he accept the State offer of 20 years, considering the evidence against him and the likelihood of a conviction and life sentence if he proceeded to trial (Id.). The offer was discussed not only with Mr. Miles but with his father and family as well (Id.). Mr. Miles decided to accept the offer (Id., docket p. 268).

Mr. Miles' decision to accept the offer was not coerced (Id.). If Mr. Miles wanted to proceed to trial, counsel would not have hesitated to do so (Id.). Counsel is a very experienced criminal lawyer who had over 100 first-degree murder trials (Id., docket p. 256). Counsel never told Mr. Miles to be untruthful with the court during the change of plea hearing (Id., docket p. 268). And he never promised Mr. Miles that if he pleaded no contest, he would receive a sentence reduction (Id., docket p. 270). In fact, he advised Mr. Miles that a sentence reduction would be difficult to get because the State would have to agree to it, since there was a plea agreement (Id., docket pp. 270-71).

The state post-conviction court's determination that defense counsel's testimony was highly credible is entitled to deference by this Court. The state post-conviction court's credibility determination — the acceptance of defense counsel's testimony over Mr. Miles' testimony — is a finding of fact that binds this Court. Mr.

Miles has failed his burden to overcome the factual finding by clear and convincing evidence. 28 U.S.C. § 2254(e). As a result, the Court finds that counsel did not coerce Mr. Miles into accepting the State's plea offer.

Mr. Miles has failed to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2). Accordingly, Ground Two warrants no relief.

**Ground Three: WHETHER THE STATE COURT'S [sic] UNREASONABLY APPLIED STRICKLAND v. WASHINGTON, 466 U.S. 668,104 S. CT. 2052, 80 L. ED. 2D 674 (1984); HILL v. LOCKHART, 474 U.S. 52, 106 S. CT. 366, 88 L. ED. 2D 203 (1985) TO THE PETITIONER'S CLAIM OF [sic] TRIAL COUNSEL WAS INEFFECTIVE IN STIPULATING TO A FACTUAL BASIS WITHOUT ACTUALLY KNOWING A FACTUAL BASIS EXISTED BECAUSE THE PRE-TRIAL INVESTIGATION WAS INADEQUATE AND INCOMPLETE WHICH PREJUDICED THE PETITIONER CAUSING THE TRIAL COURT TO DENY COUNSEL'S MOTION FOR REDUCTION OF SENTENCE FOR A LESSER SENTENCE THAN THAT OF (20) TWENTY YEARS FDOC. STATE v. SION, 942 SO.2D 934 (FLA. 3d DCA 2006); YOUNG v. STATE, 93 SO 2d 1263 (FLA. 2d DCA 2006).**

Mr. Miles contends that defense counsel was ineffective in stipulating to the State's factual basis because no sufficient factual basis existed. Mr. Miles asserts that counsel did not know the State lacked a sufficient factual basis because counsel's pre-trial investigation was inadequate.

This claim was raised in Ground Three of Mr. Miles' Rule 3.850 motion (Doc. 6-3, Exs. 23, 24, 29). In denying the claim, the state post-conviction court stated:

> Ground 3 of the Defendant's Motion reads, "The Defendant's Counsel was ineffective for stipulating to a factual basis without actually knowing that a factual basis existed which rendered the plea

29

involuntary and prejudiced the Defendant." In the "Defendant's Second Amended Motion For Postconviction Relief," the Defendant added some more argument with respect to this claim. The Defendant alleged, "Because jurisdiction is a required element of any factual basis for any crime, defense counsel's stipulation to a factual basis of the crime of Second Degree Murder, where no evidence existed or is contained in the record to establish the crime occurred in Polk County, resulted in the Defendant being convicted for an offense that the State could not otherwise proved [sic]. Had counsel challenged the factual basis, this Court would not have accepted the plea and the Defendant would have ultimately proceeded to trial and been acquitted. Absent defense counsel's error, the Defendant would not have pled guilty, but would have proceeded to trial and been acquitted. Absent trial counsel's error, there exists a reasonable probability that the outcome of the proceedings would have been different creating the necessity for relief."

In the "State's Response To The Court's Order To Show Cause," the State argues that the precise place of death cannot be established and venue was proper in both Orange and Polk County. The State further argued, "Where a court's record contains substantiation of a factual basis, including but not limited to "depositions or police affidavits," a postconviction court may rely upon those documents to deny a motion for postconviction relief alleging lack of a factual basis. *Farran v. State*, 694 So. 2d 877, 878 (Fla. 2d DCA 1997). Here, the Court's Record shows that there is ambiguity as to where in the state the victim's death took place. Elements of it occurred both in Orange County and in Polk County; Defendant was involved in the entire chain of events and the testimony of Sean Noble, Tarik Smallhorne, and David Clark at the pretrial detention hearing, along with the complaint affidavit in the Court's file alleging that a Defendant was accessory after the fact to murder, establishes a factual basis for the Defendant to be at the least treated as a principal to second degree murder." The State notes that trial counsel was aware of the issue. Venue was discussed in a Motion hearing on March 11, 2009.

The Court does not find any basis to conclude that counsel's performance fell below an objective standard of reasonableness with regard to the Defendant's claims in Ground 3 of his Motion. Ground 3 of the Defendant's Motion is denied.

(Doc. 6-4, Ex. 34, docket p. 186).

Initially, the claim is procedurally barred from review. To obtain appellate review of this claim in state court, Mr. Miles was required to raise and address the merits of the issue in his Initial Brief. *See* Rule 9.141(b)(3)(C), Fla.R.App.P. He failed to argue the issue in his Initial Brief (Doc. 6-4, Ex. 39). Therefore, he failed to invoke Florida's established appellate review process as to this claim. Consequently, he failed to exhaust his state remedies regarding this claim. *See Cortes v. Gladish*, 216 F. App'x 897, 899–900 (11th Cir.2007) (unpublished) ("had Cortes received an evidentiary hearing [on issues raised in his 3.850 motion], his failure to address issues in his appellate brief would constitute a waiver"); *Khianthalat v. Sec'y, Dep't of Corr.*, 2017 WL 9285601, at *4 (11th Cir. Dec. 20, 2017) (concluding that ineffective assistance of trial counsel claims raised in state Rule 3.850 motion but not argued on post-conviction appeal were procedurally barred from federal habeas review). Any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, because the Florida rule requiring submission of an appellate brief bars Mr. Miles from returning to state court to challenge the denial of this claim in a second appeal of the denial of the Rule 3.850 motion. *See* Rule 9.141(b)(3)(C), Fla.R.App.P. And any further attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as untimely and successive. *See* Rule 3.850(b), (h), Fla.R.Crim.P.

His failure to assert this claim on post-conviction appeal results in the default of this claim. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion). He makes none of the requisite showings to excuse his procedural default. The default therefore bars federal habeas review of this claim.

Even if the claim were not procedurally barred from review, it would fail on the merits. During the change of plea hearing, the following exchange occurred:

THE COURT: Can you give me a factual basis?

[THE PROSECUTOR]: Your Honor, I'd be happy to. There is a 9 page complaint affidavit in the court file. I don't know if –

THE COURT: Can you stipulate?

[DEFENSE COUNSEL]: We've taken the deposition of virtually every essential witness in this case and so I would advise the Court that through discovery we have no questions the State can present a prima facie case that a jury could conclude that Mr. Miles was in fact guilty. And the Court has a factual basis to accept this plea.

(Doc. 6-2, Ex. 5, docket p. 32).

Defense counsel knew from the depositions of essential witnesses,[10] the testimony during the pretrial detention hearing (see Doc. 6-3, Ex. 23, docket pp. 79-120), and the police complaint affidavit (see Doc. 6-4, Ex. 31, docket pp. 45-53) that the State could present a prima facie case that Mr. Miles was guilty of at least

---

10 Mr. Miles has presented no evidence refuting defense counsel's assertion that the essential witnesses' deposition testimony provided the State prima facie evidence of Mr. Miles' guilt.

principal to second-degree murder. Defense counsel also knew that jurisdiction was appropriate in either Orange County, where the victim was beaten and put in the trunk of his car, or Polk County, where the victim's car was driven and set on fire (Id., Ex. 35, docket pp. 262-63). *See* § 910.03(1), Fla. Stat. ("[C]riminal prosecutions shall be tried in the county where the offense was committed; but if the county is not known, the accused may be charged in two or more counties conjunctively, and before trial the accused may elect the county in which he or she will be tried. By his or her election, the accused waives the right to trial in the county in which the crime was committed. . . ."). Moreover, defense counsel strategically decided to keep the case in Polk County because the State agreed to not seek the death penalty if the case remained in Polk County and not moved to Orange County (Id.). The state post-conviction court therefore reasonably concluded that defense counsel did not perform deficiently in stipulating there was a factual basis for the plea.

Even if counsel was deficient, Mr. Miles has failed to demonstrate that he suffered prejudice. As discussed more fully above, considering the strength of the State's evidence against Mr. Miles, and the benefits of accepting the plea agreement, Mr. Miles has not shown that if counsel had not stipulated to a factual basis, there is a reasonable possibility he would not have pleaded no contest. *See Hill*, 474 U.S. 52, 59.

Mr. Miles has failed to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (d)(2). Accordingly, Ground Three warrants no federal habeas relief.

**Ground Four: WHETHER THE STATE COURT'S [sic] UNREASONABLY APPLIED STRICKLAND v. WASHINGTON, 466 U.S. 668,104 S. CT. 2052, 80 L. ED. 2D 674 (1984); HILL v. LOCKHART, 474 U.S. 52, 106 S. CT. 366, 88 L. ED. 2D 203 (1985) TO THE PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CUMULATIVE EFFECT OF TRIAL COUNSEL'S DEFICIENT PERFORMANCE WHICH PREJUDICED THE PETITIONER. JACKSON v. STATE, 575 SO 2d 181 (FLA. 1999); U.S. v. FREDERICK, 78 F. 3D 1370 (9TH CIR. 1996); U.S. v. WALLACE, 848 F. 2D 1464, 1476 (9TH CIR. 1998); VASQUEZ v. HILLER, 474 US 254 (1986).**

Mr. Miles contends that the cumulative effect of the ineffective assistance of counsel claims in Ground One through Ground Three prejudiced him because he received a sentence greater than the sentence received by his co-defendant who actually killed the victim.[11] Because Mr. Miles' individual claims do not have merit, the claim of cumulative error is meritless. *Morris v. Sec'y, Dep't Corrs.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Ground Four therefore warrants no relief.

**Mr. Miles' plea was voluntary and knowing**

In his petition, Mr. Miles asserts that his plea was not knowing and voluntary because of ineffective assistance of counsel. To demonstrate constitutionally deficient performance, Mr. Miles must "show his plea was not voluntary because he received

---

11 Mr. Miles does not identify which co-defendant killed the victim.

34

advice from counsel that was not within the range of competence demanded of attorneys in criminal cases." *Scott v. United States*, 325 F. App'x 822, 824 (11th Cir. 2009) (citing *Hill*, 474 U.S. at 58).

Mr. Miles has failed to show defense counsel's ineffectiveness undermined the knowing and voluntary nature of his plea. The plea was voluntary because he affirmatively understood the nature of the charges, the consequences of pleading guilty, and, most important, no one promised or coerced him to accept the plea agreement (See Doc. 6-2, Ex. 5, docket pp. 29-32).

The plea was also intelligent and knowing. Before accepting the plea agreement, Mr. Miles was provided with the discovery, and defense counsel discussed the evidence and witnesses with him (Doc. 6-4, Ex. 35, docket pp. 261-68). Mr. Miles wanted defense counsel to discuss a plea with the State (Id., docket p. 269). The State's plea agreement was discussed with Mr. Miles and his family, and defense counsel recommended Mr. Miles accept the offer because there was strong evidence of his guilt, and he was facing a life sentence if he proceeded to trial and lost (Id., docket pp. 268-70). Defense counsel would have proceeded to trial had Mr. Miles elected to do so (Id., docket p. 268). However, Mr. Miles made the decision to accept the plea agreement (Id.).

Defense counsel's performance did not affect the outcome of the plea process, and Mr. Miles has not shown a reasonable probability that, but for counsel's alleged errors, he would have entered a different plea and insisted on going to trial.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. This Court should grant an application for a Certificate of Appealability only if Mr. Miles makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing.[12] Accordingly, a Certificate of Appealability is **DENIED** in this case. And because Mr. Miles is not entitled to a Certificate of Appealability, he may not proceed on appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on July 21, 2021.

William F. Jung

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

SA: sfc
Copies to: George O. Miles, *pro se* and Counsel of Record

---

12 Under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . ."

36